KEVIN G. CLARKSON
ATTORNEY GENERAL

Cheryl Rawls Brooking (Alaska Bar No. 9211069)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 278-3697
Email: Cheryl.brooking@alaska.gov

Attorneys for State of Alaska

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| COOK INLETKEEPER and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> WILBUR ROSS, Secretary of Commerce; JAMES BALSIGER, Regional Administrator of National Marine Fisheries Service; NATIONAL MARINE FISHERIES SERVICE, <br><br> Defendants. | Case No. 3:19-cv-00238-SLG |

## ALASKA'S MOTION TO INTERVENE

Pursuant to FRCP 24(a) (2), proposed intervenor the State of Alaska (the "State
or "Alaska") hereby moves this Court for entry of an Order granting Alaska leave to
intervene in the instant dispute as a matter of right. Alternatively, and pursuant to

FRCP 24(b), Alaska hereby moves this Court for entry of an Order granting Alaska permissive leave to intervene in the instant dispute. Alaska's Motion to Intervene is supported by the Declarations of Douglas Vincent-Lang and Sarah Longan, and the Points and Authorities set forth below. Plaintiffs are unsure if they have a position on Alaska's Motion to Intervene. Defendants take no position. Potential Intervenor Hilcorp Alaska LLC does not oppose Alaska's motion.

## INTRODUCTION

The instant action filed by Plaintiffs Cook Inletkeeper and Center for Biological Diversity ("Plaintiffs") challenges the decision by the National Oceanic Atmospheric Administration ("NOAA"), acting through the National Marine Fisheries Service (the "Service" or "NMFS"), to issue incidental take regulations ("ITRs") and Letters of Authorization ("LOA") authorizing the unintentional take of marine mammals under the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361, *et seq.* In particular, the Service issued the LOA to Hilcorp Alaska, LLC, permitting Hilcorp Alaska to conduct underwater seismic surveys that may cause harassment to marine mammal species including the Cook Inlet beluga whale, killer whale, harbor porpoise, Steller sea lion and harbor seal. Plaintiffs allege the issuance of the ITRs and supporting documents violate the MMPA, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, the Endangered Species Act (the "ESA"), 16 U.S.C. § 1531, *et seq.*, and the Administrative Procedure Act (the "APA"), 5 U.S.C. § 551, *et seq.* Plaintiffs seek

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                    Page 2 of 21

declaratory and injunctive relief to void the ITRs and LOA, together with an award of Plaintiffs' attorney fees and costs. *See generally* First Amended Complaint (Docket #28).

Pursuant to FRCP 24(a) or, in the alternative, FRCP 24(b), Alaska seeks to intervene in this matter to defend the issuance of the ITRs, which is of direct, unique, and significant application to the State's interests. Alaska has vital sovereign interests in regulating and managing wildlife and developing natural resources within its jurisdiction. Alaska also has an interest in the welfare of its citizens, including their economic welfare, which is, in part, directly related to development of its oil and gas resources. As detailed below, Alaska receives a direct pecuniary interest from its oil and gas leases and as such, any delay in the development of those leases causes a direct negative impact on Alaska's tax revenues. Alaska's intervention is timely and would not cause prejudice or delay to any party hereto. Furthermore, as explained below, despite having similar goals, the above-captioned Defendants do not adequately represent Alaska's interests. Therefore, the Court should allow Alaska to intervene as a matter of right under FRCP 24(a)(2). Alternatively, if this Court finds Alaska is not entitled to intervene as a matter of right, Alaska should be granted permissive intervention under FRCP 24(b).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The ITRs

Since 2012, Hilcorp Alaska has invested over $1.8 billion in Alaska. Hilcorp motion at 2. In 2014, Hilcorp Alaska acquired over 300,000 acres of oil and gas leases in

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                                    Page 3 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 3 of 21

the Cook Inlet for purposes of exploring for, and ultimately developing, oil fields. 76 Fed. Reg. 58474 (Sep. 21, 2011). In July 2019, the Service published its proposed ITRs to Hilcorp Alaska. 84 Fed. Reg. 37442 (July 31, 2019). On October 4, 2019, the Service issued amended LOA. 84 Fed. Reg. 53119.

**B    Alaska's Interests in Instant Action**

Alaska, as a sovereign State and pursuant to its public trust responsibilities, has an interest in managing and conserving all wildlife and other natural resources within its jurisdiction, including marine mammals covered by the LOA, their habitat, and their food sources. Alaska Const. Art. VIII, §§ 1, 4; Alaska Stat. § 16.05.020. As a result, Alaska shares wildlife responsibilities and jurisdiction with the federal government as a matter of Constitutional law, with Alaska having the lead authority absent legislation that provides otherwise. *See, e.g., Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976) (recognizing that states have broad trustee and police powers over wild animals within their jurisdictions unless preempted by federal law).

Alaska fulfills its management responsibilities through its Fish and Game, Natural Resources, and Environmental Conservation. (Declaration of Douglas Vincent-Lang ¶10); *see generally* Alaska Stat. § 16.05.020(2) ("The commissioner shall***(2) manage, protect, maintain, improve, and extend the fish, game and aquatic plant resources of the state in the interest of the economy and general well-being of the state"). This management scheme necessitates substantial interaction and coordination when

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                                    Page 4 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 4 of 21

there are federal programs, such as the ESA and the MMPA, overlaying state responsibilities. The marine mammals covered by the LOA, including the Cook Inlet beluga whale, fall squarely within this regulatory scheme. As such, Alaska has a direct interest in the resolution of any litigation concerning the LOA and all marine mammals impacted by it, including the Cook Inlet beluga whale.

Furthermore, in the event the parties engage in any mediation and/or settlement of this dispute, Alaska would be a key participant in negotiating a possible resolution. This is so because any possible solution involving a change in management of the beluga whale, or other marine mammal species, or development of Alaska's resources, would necessarily require Alaska's participation and approval.

Moreover, as a sovereign state, Alaska has unique interests in any issues arising from or related to the consultation process set forth under section 7 of the ESA. 16 U.S.C. § 1536. States have a special voice in ESA decisions, and the ESA is infused with the concept of federal-state cooperation. *See* 16 U.S.C. § 1535(a) (instructing the Secretary to cooperate to the "maximum extent practicable" with the states in carrying out the ESA's policies and purposes). For instance, pursuant to 16 U.S.C. § 1533(i), if "a State agency . . . files comments disagreeing with all or part of the proposed regulation, and the Secretary issues a final regulation which is in conflict with such comments . . . [the Secretary shall] submit to the State agency a written justification for [the] failure to adopt regulations consistent with the agency's comments or petition."

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                     Page 5 of 21

Alaska is also responsible for its citizens' welfare, including their economic welfare. The oil and gas industry is Alaska's largest non-governmental industry, and in 2018 accounted for 5.2 percent of private sector jobs and 16.1 percent of private sector payroll. (Declaration of Longan ¶4). Revenue derived from the oil and gas industry in the form of taxes, royalties, and rentals provided Alaska with an estimated 80 percent of the State's general fund unrestricted revenues for FY 2018. (Declaration of Longan ¶18). The State receives a direct pecuniary benefit from leases acquired by the oil and gas industry, such as Hilcorp Alaska's leases. (Declaration of Longan ¶¶13-19).

Further, Hilcorp Alaska's ITRs and LOAs were obtained for purposes of conducting seismic surveys to locate and develop oil fields in the Cook Inlet. Unjustified efforts to stop or delay such exploration and development have a direct negative economic impact on Alaska and its citizens in the form of lost employment and tax revenues. As previously noted, Alaska's Constitution imposes a duty on the State to responsibly manage and develop Alaska's natural resources for the maximum benefit of its people. Art. VIII, §§ 1 & 2. Plaintiffs' claims interfere with this duty and set a precedent that may adversely impact future oil and gas exploration and development.

## POINTS AND AUTHORITIES

### A.    Alaska is Entitled to Intervention as a Matter of Right

Pursuant to FRCP 24(a)(2), a court must, upon timely motion, permit intervention as a matter of right by anyone who:

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                    Page 6 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 6 of 21

> "[C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

When analyzing a motion to intervene as a matter of right under FRCP 24(a)(2), the Ninth Circuit applies a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011); (citing *Sierra Club v. US EPA*, 995 F.2d 1478, 1481 (9th Cir.1993)). Courts construe FRCP 24(a)(2) liberally in favor of potential intervenors. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Practical and equitable considerations guide courts in determining whether intervention is appropriate. *Sw. Ctr. For Biological Diversity*, 268 F.3d at 818; *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broad access to courts.").

In evaluating a motion to intervene under FRCP 24(a), a court must accept as true the non-conclusory allegations made in support of an intervention motion. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820. As set forth below, Alaska has satisfied all four

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                      Page 7 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 7 of 21

elements and as a result, is entitled to intervene as a matter of right.

        1.      **Alaska's Motion is Timely**

The first criterion for intervention of right is timeliness, which itself involves an analyses of three factors: (1) stage of proceedings; (2) prejudice to other parties; and (3) reason for and length of delay, if any. *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997). "Mere lapse of time alone is not determinative." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Prejudice to existing parties is the most important timeliness consideration. *Id.*

First, the Motion to Intervene was filed at the outset of these proceedings. In particular, as of the date of filing, no substantive pleadings, other than the First Amended Complaint and several other motions to intervene, have been filed. Alaska files this Motion to Intervene prior to filing of substantive motions, and intends to fully comply with all schedules and deadlines currently established. As such, this factor weighs in favor of finding that Alaska's Motion to Intervene is timely.

Second, Alaska's participation will not prejudice the other parties. Alaska has attached a proposed Answer to Plaintiffs' First Amended Complaint contemporaneously with this Motion to Intervene. Alaska will endeavor to avoid duplication of issues with other parties. Moreover, given the relative infancy of this lawsuit, Alaska's intervention will not cause undue delay or adversely impact any parties' rights in this action. This factor also weighs in favor of finding that Alaska's Motion to Intervene is timely.

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                  Page 8 of 21

Third, the length of delay from the filing of the First Amended Complaint in August 2019 and the instant Motion to Intervene is minimal. Any actual delay reflects the time necessary for Alaska to review the First Amended Complaint and assess the necessity of intervention and draft the relevant pleadings in support of the same. No substantive actions have taken place between the original filing of the Complaint and Alaska's instant Motion to Intervene. Thus, Alaska's Motion to Intervene is timely.

### 2. Alaska Claims a Significantly Protectable Interest in this Action

The second element for intervention as a matter of right requires that the proposed intervenor demonstrates a "significantly protectable interest" by showing that "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [its] legally protectable interest." *Sw. Ctr. for Biological* Diversity, 268 F.3d at 818. The Ninth Circuit applies this broad interest criterion to involve "as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. It is generally sufficient that the interest asserted is protectable under some law, and that there is a relationship between the protected interest and the claims at issue. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. Here, Alaska has several specific and significantly protectable interests in the subject matter of the instant dispute. As detailed below, these interests, whether viewed individually or collectively, satisfy the second element of the intervention analysis.

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                          Page 9 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 9 of 21

First, Alaska has a direct economic interest in the results of the instant dispute. As previously noted, Alaska has an ownership interest in the property subject to the Hilcorp Alaska leases. (Declaration of Longan, ¶ 3). Again, the oil and gas industry is a critical aspect of Alaska's economy. *Id.* at ¶ 4. Many Alaskans rely on the industry's activities for employment, and the State and its municipalities collect tax and royalty revenues from oil and gas development that are subsequently used to provide services to their citizens. *Id.* at ¶¶ 13-19. The amount of revenues Alaska receives are directly tied to the actual development of the leased property. For example, Alaska receives royalties from each lease. *Id.* at ¶ 16. The royalties represent the State's share of the production as the mineral interest owner. *Id.* Royalties provided more than $1.0 billion in revenue to the state in FY 2018. *Id.* State oil and gas lease royalty rates vary depending on the area, but are generally 12.5 percent in Cook Inlet. *Id.*

This revenue provides for the State's education budget, operating budget, and capital budget, and funds local municipalities' assistance programs, capital projects, basic government operations, and education programs. *Id.* at ¶¶ 18-19. When leased property is not developed, Alaska receives a significantly reduced revenue stream from its leases (e.g., no royalties, reduced taxes, etc.). *Id.* at p. 7, ¶ 21.

The LOA issued to Hilcorp Alaska are necessary to allow Hilcorp Alaska to explore and ultimately develop the leased property. Plaintiffs seek to enjoin the LOA which, in turn, will ultimately delay the development of oil and gas in the Cook Inlet.

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                      Page 10 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 10 of 21

Any such delays will have significant adverse impacts on Alaska's economy and its citizens' welfare. By preventing Hilcorp Alaska from exploring the leased property, Plaintiffs are also preventing development of that property, resulting in the direct pecuniary losses described above.

In addition, a decision in favor of Plaintiffs may result in fewer future lease sales. (Declaration of Longan, ¶ 22). In particular, if this Court found in Plaintiffs' favor, the stability and regulatory predictability of Alaska's oil and gas lease program would be jeopardized. The oil and gas industry makes investments according to a balance of risk and return. An uncertain regulatory environment increases the risk imposed on industry investment in Alaska's oil and gas. *Id.* This increased risk, in turn, will cause oil and gas development investment to go elsewhere, where the rewards are greater and the regulatory environment more stable. As a result, a finding in Plaintiffs' favor would have a clear chilling effect on future oil and lease sales, further harming Alaska. *Id*.

Second, Alaska has an interest in the management and regulation of its wildlife and natural resources. Plaintiffs' requested relief also impacts the State's sovereign authority in regulating, managing, and conserving all wildlife and other natural resources within its jurisdiction, including the Cook Inlet beluga whale. (Declaration of Douglas Vincent-Lang, ¶¶ 10-11). Further, by seeking to delay issuance of Hilcorp Alaska's LOA, and thereby exploration and development of oil and gas fields in the Cook Inlet, Plaintiffs' requested relief frustrates Alaska's constitutional mandate to develop and

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                    Page 11 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 11 of 21

utilize its natural resources, including its oil and gas leases. *See* Alaska Const. Art. VIII, §§ 1, 2, 4. As a result, any action that adversely impacts Alaska's natural resources necessarily creates a significantly protectable interest.

Courts have consistently held that rights such as those asserted by Alaska are sufficient to meet the standards required to intervene as a matter of right. *See, e.g., Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924 (9th Cir.1990) (finding that a City's interests in taxing and regulating contested lands were significantly protectable interests warranting intervention as of right); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997-98 (8th Cir.1993) (finding that county's and landowners' property values that could be affected by the outcome of the litigation were protectable interests warranting intervention); *Douglas County v. Babbitt*, 48 F.3d 1495, 1497, 1501 (9th Cir.1995) (holding that a county asserting proprietary environmental interests in lands adjacent to federal land had standing to challenge the Secretary of the Interior's failure to comply with NEPA); *Sierra Club v. Robertson*, 960 F.2d 83-84 (8th Cir.1992) (finding that a State's asserted interests in fish and wildlife, recreational opportunities, and water quality were sufficient to proceed as plaintiff-intervenor challenging the Forest Service's forest management plan). For the aforementioned reasons, Alaska has several significantly protectable interests in this dispute and must be able to fully defend the LOA.

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                         Page 12 of 21

### 3. Disposition of this Dispute Would Impair and Impede Alaska's Ability to Protect Its Interests

A third criterion for intervention as of right is that the action's disposition may, as a practical matter, impair or impede the intervenor's ability to protect the asserted interest. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d at 1177. The question of impairment is not separate from the question of existence of an interest. *See, e.g., Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). In reviewing this prong, courts look "to the 'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation [remains] available." *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977).

Disposition of this action in Plaintiffs' favor would set aside the LOA and lead to additional delay in the exploration and development of oil and gas fields in the Cook Inlet. In addition to the direct impacts such a result would have on Alaska's management of its wildlife, its natural resources and its economy, as discussed above, disposition of this lawsuit may have far-reaching future consequences to the State. Pursuant to the principles of res judicata, claim preclusion, *stare decisis*, and related doctrines, the effects of the legal and factual determinations made in this litigation may constrain the State's ability to defend similar challenges in parallel or subsequent judicial proceedings or administrative actions. *U.S. ex rel. McGough v. Covington Technologies Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992); *Fund For Animals, Inc. v. Norton*, 322 F.3d

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                    Page 13 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 13 of 21

728, 735 (D.C. Cir. 2003) (finding disposition of lawsuit impaired intervenor's ability to protect its interests regardless of whether intervenor could reverse an unfavorable ruling by bringing a separate lawsuit, noting that "[t]here is no question that the task of reestablishing the status quo if [plaintiffs succeed] in this case will be difficult and burdensome."). For these reasons, Alaska satisfies the impairment requirement.

### 4.    Alaska's Interests are Not Adequately Represented

The final criterion is whether the representation of Alaska's interests by existing parties "may be" inadequate. The burden of that showing is minimal. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. In assessing representation, courts consider (1) whether the present parties' interests are such that they will undoubtedly make all of the intervenor's arguments; (2) whether the present parties are capable and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. The inquiry should focus on the subject of the action, not just the particular issues before the court at the time of the motion. *Id.* at 823. Where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. *Id.*

As a preliminary matter, Alaska's interests cannot be adequately represented by Plaintiffs. *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986) (adverse party cannot adequately represent applicant's interests), *rev'd on other grounds by*

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                          Page 14 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 14 of 21

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).

Alaska's interests are also not adequately represented by Defendants, including the Associations and Hilcorp Alaska itself. Alaska acknowledges that the ultimate goal of both Alaska and Defendants will be to uphold the LOAs. However, Alaska has a separate and distinct interest in the management, conservation, and regulation of all wildlife and other natural resources within its jurisdiction, including all marine mammals covered by the LOAs, as well as their habitat and food sources. Alaska Const. Art. VIII, §§ 1, 2, 4; Alaska St. § 16.05.020. Alaska also has a distinct interest in the protection of its citizens' economic welfare which, as previously explained, is directly impacted by the instant challenge to the LOA. While the Service may have an interest in particular species within its purview, that interest is distinct from Alaska's broader interest in management of its wildlife and development of its natural resources. Put another way, while the Service may have a focused interest in the Cook Inlet beluga whale and its habitat, and the validity of the LOA as it relates to the beluga whale, Alaska's interest includes all of its wildlife and natural resources that may be affected by the instant challenge to Hilcorp Alaska's LOA, any precedent such a challenge may set, and the overall impact such a decision will have on Alaska's economy and its citizens. *See, e.g.*, *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (finding Arkansas' interest not adequately protected by Plaintiffs because "[t]he State is a government entity, obliged to represent the interests of all of its citizens . . . the State has an interest in protecting and promoting the state economy on behalf of all

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                    Page 15 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 15 of 21

of its citizens . . . the State has an interest in protecting its tax revenues."). Similarly, while the Associations and Hilcorp Alaska may also seek to uphold the LOA, their interests are focused on the development of oil and gas resources by the private sector generally, in the case of the Associations, or the specific impacts of the instant LOA and associated lease interests, in the case of Hilcorp Alaska. Like the Service's interest, specifically in Cook Inlet beluga whales, the interests of the Associations and Hilcorp Alaska are far narrower than those asserted by Alaska in its wildlife, natural resources, economy, and citizens.

Alaska also has a separate and distinct interest in the development of oil and gas resources in the State, and for the benefit of its citizens, not shared by the other Defendants. The Service, in administration of a nationally applicable statute, could not be expected to adequately represent the State's interest in such resources. *Fund For Animals, Inc. v. Norton,* 322 F.3d 728, 736 (D.C. Cir. 2003) ("[Service's] obligation is to represent the interests of the American people . . . while the [intervenor's] concern is for [its foreign state's] people and natural resources."). Representing both Alaska's unique state interests and the Service's broad national interests is "on its face impossible" and creates a potential conflict of interests that satisfies the minimal burden of showing inadequate representation. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002). Likewise, the interest of Hilcorp Alaska in private sector development of oil and gas is also significantly divergent. While Hilcorp Alaska has an interest in

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                              Page 16 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 16 of 21

natural resource development, their interests are significantly narrower, focusing instead on the impact on private industry, generally, or Hilcorp Alaska, specifically. In contrast, Alaska has a constitutional mandate to sustainably develop its natural resources for the benefit of its citizens, thereby comprising a much broader set of interests than those asserted by the private industry groups. *See, e.g., Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (in holding private applicants' and United States Forest Service's interests sufficiently different, court stated "the government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation.") (Internal quotations omitted). In fact, this divergence of focus may result in Alaska and the other Defendants taking different positions on issues associated with jurisdiction, the merits of the case, appropriate remedies, and/or settlement proposals.

As a result, it is clear that the other parties to this dispute will not raise Alaska's arguments in defense of the LOA, particularly those defenses arising from Alaska's interest in its development of its natural resources, management of its wildlife and protection of its citizens' economic welfare. Likewise, given Alaska's unique role, the other parties to this dispute simply cannot raise all of Alaska's anticipated or potential arguments. In addition, Alaska can offer unique and useful scientific and commercial information regarding the beluga whale, its habitat, and the impact of delaying issuance

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                        Page 17 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 17 of 21

of the LOA on Alaska's economy. (Declaration of Douglas Vincent-Lang, ¶¶ 7, 11). This information may be critical to the alleged MMPA, ESA, NEPA, and APA violations. This information would also be critical to the Court in assessing any possible remedy, should a violation be found to have occurred, particularly if the Court is required to balance the equities in fashioning such a remedy.

The parties' divergent interests will also be felt in matters not directly related to litigation. For example, if the parties engage in any form of settlement and/or mediation, it is likely that a future settlement proposal solely between Plaintiffs and Defendants would not necessarily consider Alaska's interests. As such, it is paramount that Alaska be involved in such discussions to ensure its interests are also considered.

In sum, the State of Alaska satisfies all elements under FRCP 24(a)'s requirements and is entitled to intervene as of right. For these reasons, this Court should enter an Order granting Alaska leave to intervene in the instant dispute.

## B. Alaska Is Entitled To Permissive Intervention

Alternatively, if this Court finds Alaska is not entitled to intervention as a matter of right, the State of Alaska requests permissive intervention under FRCP 24(b). Upon timely filing of a motion, a court may permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." FRCP 24(b). In reviewing a permissive motion to intervene, a court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                                    Page 18 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 18 of 21

parties. *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459, 60 S. Ct. 1044, 1055, 84 L. Ed. 1293 (1940).

First, Alaska's motion is timely for the reasons presented in Section A. Second, Alaska also satisfies FRCP 24(b)'s commonality requirement. Under governing Ninth Circuit precedent, applicants meet the requirement for a common question of law or fact when they assert defenses "directly responsive" to the plaintiffs' claims, as Alaska has done here. *See, e.g., Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002) (intervenor environmental group seeking to defend Forest Service "roadless" rule granted permissive intervention), *rev'd on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Because the State seeks to defend the challenged federal agency actions, Alaska's defenses have questions of law and fact in common with Plaintiffs' claims and, presumably, Defendants' defenses to the same. As a result, in the event this Court finds Alaska is not entitled to intervention as a matter of right, Alaska nonetheless satisfies the elements for FRCP 24(b). As such, this Court should enter an Order granting Alaska leave to intervene in this lawsuit.

## CONCLUSION

For the reasons set forth above, this Court should grant Alaska's Motion to Intervene as of right under Rule 24(a), or alternatively, permit Alaska to intervene under Rule 24(b).

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                                                    Page 19 of 21

Case 3:19-cv-00238-SLG   Document 31   Filed 11/13/19   Page 19 of 21

Respectfully submitted this 13th day of November, 2019.

KEVIN G. CLARKSON
ATTORNEY GENERAL


By: s/ Cheryl Rawls Brooking
    Cheryl Rawls Brooking,
    Alaska Bar No. 9211069
    Assistant Attorney General
    Department of Law
    1031 W. 4th Avenue, Suite 200
    Anchorage, AK 99501
    Telephone: 907-269-5232
    Facsimile: 907-279-3694
    Email: cheryl.brooking@alaska.gov


    Attorney for Proposed Intervenor the
    State of Alaska

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                   Page 20 of 21

Case 3:19-cv-00238-SLG  Document 31  Filed 11/13/19  Page 20 of 21

**Certificate of Service**

I hereby certify that on November 13, 2019, a copy of the foregoing *Alaska's Motion to Intervene, Declaration of Douglas Vincent-Lang (with Exhibit A), Declaration of Sara Longan, PHD, In Support of State of Alaska's Motion to Intervene Pursuant to FRCP 24,* and *[Proposed] Order Granting Alaska's Motion to Intervene*, was electronically served on the following:

       Julie Teel Simmonds (jteelsimmonds@biologicaldiversity.org)
       Kassia Rhoades Siegel (ksiegel@biologicaldiversity.org)
       Kristen Angela Monsell (kmonsell@biologicaldiversity.org)

       James C. Feldman (james.feldman@stoel.com)
       Jason T. Morgan (jason.morgan@stoel.com)
       Ryan P. Steen (ryan.steen@stoel.com)

                s/ Cheryl Rawls Brooking

*Cook Intletkeeper, et al., v. Ross, et al.,*
Alaska's Motion to Intervene
Case No. 3:19-cv-00238-SLG                    Page 21 of 21

Case 3:19-cv-00238-SLG  Document 31  Filed 11/13/19  Page 21 of 21