KEVIN G. CLARKSON
ATTORNEY GENERAL

Cheryl Rawls Brooking (Alaska Bar No. 9211069)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 278-3697
Email: cheryl.brooking@alaska.gov

Attorneys for State of Alaska

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| COOK INLETKEEPER and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>v.<br><br>WILBUR ROSS, Secretary of Commerce; JAMES BALSIGER, Regional Administrator of National Marine Fisheries Service NATIONAL MARINE FISHERIES SERVICE,<br><br>Defendants. | Case No. 3:19-cv-00238-SLG |

## DECLARATION OF Douglas Vincent-Lang

I, Douglas Vincent-Lang, declare as follows:

1. I submit this declaration in support of the State of Alaska's Motion to Intervene as Defendant. If called as a witness, I have personal knowledge of the matters set forth herein, and could and would competently testify thereto.

2. I hold a B.S. degree in Biology/Population dynamics from the University of Wisconsin-Green Bay and an M.S. degree in Biological Oceanography from the University of Alaska Fairbanks.

3. I was appointed Commissioner of the Alaska Department of Fish and Game ("ADF&G") in January 2019. I previously served as Director of the ADF&G Division of Wildlife Conservation from 2012 through 2014. Prior to serving as Director, I was the Endangered Species Act ("ESA") Coordinator for the State of Alaska, serving in that capacity since September 2007. In that position, I chaired the North Slope Science Initiative and was the vice chair for the Arctic Landscape Conservation Cooperative. Previously I worked for the ADF&G Division of Sport Fish for 28 years as a research and management biologist and Assistant Director.

4. I represented the then-Commissioner of ADF&G on the Governor's Climate Change Sub-cabinet, which was tasked with developing a climate change strategy for Alaska, and on the Governor's Oceans Sub-cabinet. I also served as the Commissioner's alternate on a natural resources sub-cabinet, which was tasked with coordination of natural resource (land and water resources) issues. I have led

ADF&G work on arctic and marine policy issues. I chaired a think-tank of Department scientists that developed a climate change adaptation strategy for fish and wildlife and their consumptive and non-consumptive uses, including commercial, recreational, and personal use, subsistence fishing and hunting, and wildlife viewing activities.

5. With respect to the Endangered Species Act ("ESA") (16 U.S.C. § 1531, *et seq.*) and the Marine Mammal Protection Act ("MMPA") (16 U.S.C. § 1361 *et seq.*), I have worked on ESA and MMPA issues with the Alaska Governor's office and the Departments of Natural Resource, Environmental Conservation, Commerce, Community and Economic Development, and Law. I also have been involved in various litigation efforts pertaining to the ESA and MMPA. I have served on various committees and attended numerous meetings on behalf of the State of Alaska, including leading a state policy team on ESA and MMPA issues; participating in ESA and MMPA committees for the Western Association of Fish and Wildlife Agencies and its parent organization, the Association of Fish and Wildlife Agencies, which included serving on a State-Federal ESA Joint Task Force. I also represented the State of Alaska on several international committees dealing with issues relating to the ESA, MMPA, and the Convention on the International Trade of Endangered Species ("CITES").

6. As Commissioner, I currently oversee all matters involving endangered and threatened species in the State of Alaska. My staff coordinates the preparation, collection, organization, and policy oversight on all comments regarding federal agency actions involving all aspects of the ESA, including listings, delistings, critical habitat designations, recovery planning, Section 7 consultations, and regulatory changes.

7. Specifically with respect to the Cook Inlet beluga whale, I served as a member of the Cook Inlet Beluga Whale Recovery Team, formed by the National Marine Fisheries Service to develop a recovery plan for beluga whales in Cook Inlet. As Director of the ADF&G Division of Wildlife Conservation, I also oversaw all Department research and other activities involving beluga whales, which occurs within the Division's Marine Mammal Program ("MMP"). The MMP has conducted research on several aspects of Cook Inlet beluga whale biology, including population growth; whale diets, using stomach contents and isotopes; and vocal behavior, using acoustics. The MMP also has conducted assessments of prey species important to the Cook Inlet beluga whale. More information can be found at the website for the ADF&G's Division of Wildlife Conservation, Marine Mammal Program:

http://www.adfg.alaska.gov/index.cfm?adfg=marinemammalprogram.main.

8. ADF&G maintains a network of area offices throughout the range of the Cook Inlet beluga whale. Because of the lack of federal agency offices in these areas, ADF&G area offices address citizen questions and concerns from local communities regarding the Cook Inlet beluga whale.

9. Based on my present position, my employment experience, my training, and my personal knowledge, I am familiar with the effects of the ESA, MMPA, and other statutes on Alaska's sovereign interests, activities, wildlife, habitat, land, and natural resource management interests, including the effects on the following: (a) Alaska's management of its wildlife resources and the land, water, and other habitat for those resources; (b) Alaska's wildlife research and information gathering and dissemination activities for a number of species, including the Cook Inlet beluga whale; (c) Alaska's interests in Native subsistence harvest and management; (d) Alaska's management of its state lands and waters and natural resource programs; (e) land management and planning and human/wildlife interactions in Alaska's municipalities, which are political subdivisions of the State, within the range of the Cook Inlet beluga whale; (f) Alaska's community development interests; and (g) Alaska's economy and associated economic factors and interests that may be affected by natural resource allocation and management decisions.

10. The State of Alaska participates in the direct management of its wildlife resources

and the State lands and waters comprising habitat for fish and wildlife of all types, including the Cook Inlet beluga whale, through its Departments of Fish and Game, Natural Resources, and Environmental Conservation. The State's legal title and regulatory interests extend to its offshore submerged lands and waters, which include the critical habitat designated pursuant to the ESA for the Cook Inlet beluga whale, as well as the property subject to leases held by Hilcorp Alaska, LLC ("Hilcorp Alaska").

11. Although the Cook Inlet beluga whale is a marine mammal and therefore subject to the MMPA, Alaska retains management responsibility and authority that is not displaced by either the MMPA or the ESA. The remaining Cook Inlet beluga whale management responsibility and authority that Alaska maintains includes habitat management and guideline formation; research and information gathering and dissemination; participating in agreements with other governmental agencies and entities including the National Marine Fisheries Service ("NMFS"), concerning Cook Inlet beluga whale research and management issues; management and research on Cook Inlet beluga whale prey species; and other activities including research, monitoring, conservation practices, and the recommendation and imposition of mitigation requirements on State-regulated activities for the protection and conservation of the State's wildlife resources, including the Cook Inlet beluga whale.

12. For example, the Limited Cooperative Agreement Between the United States Department of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service and the Alaska Department of Fish and Game for the Conservation of Threatened and Endangered Species (the "Cooperative Agreement"), a true and correct copy of which is attached hereto as ***Exhibit A*** and incorporated by this reference herein, contains affirmative conservation measures for multiple species, including the Cook Inlet beluga whale. The Cooperative Agreement establishes a cooperative program, pursuant to Section 6 of the ESA, for the conservation of the Cook Inlet beluga whale, among other species, which may include (a) law enforcement; (b) research; (c) management; and (d) public information and education activities conducted for the benefit of the Cook Inlet beluga whale.

13. A potential judgment in Plaintiffs' favor that denies, delays, revokes or enjoins the Incidental Take Regulations ("ITRs") or Letters of Authorization ("LOA") issued to Hilcorp Alaska interferes with Alaska's management of its own wildlife and natural resources, including oil and gas lease sales and the development of mitigation measures for those lease sales. The ITRs and LOAs provide measures to protect wildlife resources during various activities that may be permitted while these measures are in effect.

14. In addition to interfering with Alaska's sovereign interests in managing its

resources, a judgment in Plaintiffs' favor would have a direct negative impact on the State's economic interests. The State's oil and gas leasing activities, together with federal offshore oil and gas leasing activities, are important to the State's operations, management, and income—both for management of wildlife (including the Cook Inlet beluga whale) and other purposes—because the royalty and tax revenue the activities generate provides income and economic benefit to the State of Alaska and its citizens. The impact of a judgment in Plaintiffs' favor would include the loss of royalties and tax revenues from Hilcorp Alaska's leases.

15. A successful judgment in favor of Plaintiffs would also create an environment of regulatory unpredictability, further stymying future exploration and development of Alaska's resources. By denying use of valid, ITRs and LOAs, future developers would be left without any guidance as to when and if they could ever explore and develop a lease purchased from the State. Such uncertainty would not only chill future lease sales and development, it would have a direct impact on the State's tax and royalty revenues.

16. These injuries to Alaska's interests would be fairly traceable to judgment in favor of Plaintiffs. As a direct result of such a judgment, Alaska's lands and waters, and development of the underlying oil and gas resources there—including the Hilcorp Alaska leases—will be hindered by way of delayed exploration and development. Further, a judgment in favor of Plaintiffs would also result in unwarranted

interference and regulatory burdens on the development of Alaska's oil and gas resources, whether state or federal, that will ultimately result in revenue losses and associated impacts to Alaska and its citizens.

17. These injuries to the State's interests are redressable by this Court. A judgment in favor of Defendants, and adverse to Plaintiffs, would uphold Hilcorp Alaska's reliance on valid ITRs and LOAs and avoid the detrimental effects described above. Furthermore, a judgment in favor of Defendants would deter future challenges to similar, equally valid, permits and authorizations that may be issued in areas involving marine mammals, including endangered and threatened species. A judgment in favor of Defendants would thereby permit Alaska to continue with management of State lands, waters, and natural resources, resulting in increased revenue for the State and increased ability for the State to manage its own economic development, community development, and natural resource development and conservation—including conservation of the Cook Inlet beluga whale and other wildlife species and their habitat.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___6___ day of November, 2019, at Juneau, Alaska.

Douglas Vincent-Lang