EDWARD C. THOMAS
Trial Attorney, Natural Resources Section
United States Department of Justice
Post Office Box 7611
Washington, D.C. 20044-7611
Edward.C.Thomas@usdoj.gov
Tel: (202) 305-0239

JOHN H. MARTIN
Trial Attorney, Wildlife & Marine Resources Section
999 18th St., South Terrace Suite 370
Denver, CO 80202
john.h.martin@usdoj.gov
Tel: (303) 844-1383

*Of counsel:*
JOHN FONSTAD, Assistant U.S. Attorney
District of Alaska

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| COOK INLETKEEPER et al.,<br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>GINA RAIMONDO, Secretary of<br>Commerce, et al.<br>　　　Defendants,<br>　　and<br><br>HILCORP ALASKA, LLC; and<br>STATE OF ALASKA<br>　　　Intervenor-Defendants | Case No. 3:19-cv-00238-SLG<br><br>**FEDERAL DEFENDANTS'<br>SUPPLEMENTAL BRIEF ON THE<br>APPROPRIATE REMEDY** |

# INTRODUCTION

Federal Defendants Gina Raimondo, in her official capacity as Secretary of Commerce, Dr. James Balsiger, in his official capacity as Regional Administrator of the National Marine Fisheries Service, and the National Marine Fisheries Service ("NMFS"), submit this brief pursuant to the Court's March 30, 2021 Order on the parties' cross-motions for summary judgment, which ordered the parties to file supplemental briefs on the appropriate remedy by April 27, 2021. *See* ECF No. 73 ("Order"). In its Order, the Court found that NMFS's determination that noise from Defendant-Intervenor's ("Hilcorp") tugboats towing drill rigs would not cause any take of Cook Inlet beluga whales was arbitrary and capricious. *Id*. at 52. As explained below, the only appropriate remedy is to remand the matter to NMFS and allow the agency to exercise its discretion on how to proceed with reevaluation of the Incidental Take Regulations ("ITR") at issue. Remand, however, should be without vacatur. Not only would vacatur commit NMFS to expend limited resources on administrative procedures that it may decide on remand are not necessary, but it would be inequitable where the Court upheld significant portions of the analysis contained in the ITR, Biological Opinion ("BiOp"), and Environmental Assessment ("EA"). The Court should also decline to impose any artificial deadlines on remand, allowing NMFS to exercise its discretion on how best to address the Court's ruling. NMFS currently estimates that, after the agency's receipt of additional, required information from Hilcorp, it will take approximately twelve months to properly address the issues raised by the Court's opinion.

# ARGUMENT

**I. The appropriate remedy is to remand the matter for further consideration consistent with the Court's decision.**

Plaintiffs brought their claims pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Order at 7. As a result, the choice of remedy is governed by administrative law principles. It is well-established that, in APA cases, the reviewing court "'is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.'" *Immigr. & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). "Rather, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id*. (quoting *Fla. Power*, 470 U.S. at 744).

An administrative agency ordered to reconsider a prior decision retains the discretion to determine how it "may best proceed to develop the needed evidence and how its prior decision should be modified in light of such evidence as [it] develops." *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333-34 (1976). As the Supreme Court noted in *Federal Power Commission*, in the absence of substantial justification for doing otherwise, a reviewing court may not dictate to the agency "the methods, procedures, and time dimension of the needed inquiry[.]" *Id*. at 333. Nor may a court demand that an agency reach a particular result on remand. *See NLRB v. Food Store Emp. Union*, 417 U.S. 1, 10 (1974) ("[W]hen a reviewing court concludes that an agency invested with broad discretion … has apparently abused that discretion … remand to the

agency for reconsideration, and not enlargement of the agency order, is ordinarily the reviewing court's proper course."); *Nat'l Tank Truck Carriers, Inc. v. EPA*, 907 F.2d 177, 185 (D.C. Cir. 1990) ("We will not, indeed we cannot, dictate to the agency what course it must ultimately take") (citations omitted). Such a procedure "clearly runs the risk of 'propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency.'" *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 545 (1978) (quoting *Sec & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *accord Ventura*, 537 U.S. at 16 (noting that a "judicial judgment cannot be made to do service for an administrative judgment" and that a reviewing court may not "intrude upon the domain which Congress has exclusively entrusted to an administrative agency").

The Ninth Circuit has affirmed these principles, concluding that, where a "court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits." *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980). The Ninth Circuit also has directed that "intervention into the process of environmental regulation, a process of great complexity, should be accomplished with as little intrusiveness as feasible." *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980). Thus, in a case where the Ninth Circuit found violations of the National Forest Management Act and the National Environmental Policy Act ("NEPA") in connection with the Forest Service's approval of a wildlife habitat improvement project involving a timber sale, the Ninth Circuit, following *Federal Power*

*Commission*, decided to "remand this case to the Forest Service for further proceedings consistent with this opinion." *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 965-66 (9th Cir. 2005); *Phonekeo v. Gonzales*, 238 F. Appx. 235, 237 (9th Cir. 2007) (remand for agency determination).

Here, having ruled that NMFS's determination that noise from tugboats towing drill rigs would not cause any take of Cook Inlet beluga whales was arbitrary and capricious, the Court should remand the matter to the agency for further consideration consistent with the Court's opinion. The Court should decline what NMFS anticipates will be Plaintiffs' invitation to order NMFS to engage in a specific process with a specific completion date, as doing so would improperly dictate what course the agency must take, *Nat'l Tank Truck Carriers*, 907 F.2d at 185, and runs the risk of "intrud[ing] upon the domain which Congress has exclusively entrusted to an administrative agency," *Ventura*, 537 U.S. at 16, by stripping NMFS of its statutory authority and discretion to determine how best to carry out its responsibilities under the Marine Mammal Protection Act ("MMPA") and Endangered Species Act ("ESA"), and NEPA.

Having found that NMFS acted in a manner that was arbitrary and capricious by failing to adequately support its determination that tugs will not cause any take of beluga whales, the only appropriate remedy is for the Court to remand that portion of the ITR and supporting NEPA and ESA analyses to NMFS for further consideration consistent with the Court's decision. The Court should not dictate what course the agency must take on remand, nor, as explained below, should it vacate the regulation.

## II. Remand should be without vacatur.

While the matter is on remand to NMFS, the ITR and associated analyses should remain in place, and not be set aside. Indeed, "[a] flawed rule need not be vacated." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam). Rather, "when equity demands, the regulation can be left in place while the agency follows the necessary procedures" to address an adverse court ruling. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405-06 (9th Cir. 1995)). "[T]he decision whether to vacate depends on the seriousness of the [regulation's] deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (citation omitted); *Cal. Cmtys.*, 688 F.3d at 992 (same). Also relevant to the analysis is whether "by complying with procedural rules, [the agency] could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

Both the Ninth Circuit and the D.C. Circuit have allowed agency actions to remain in place pending completion of a remand, even where those actions have been found to be "arbitrary and capricious." *See, e.g.*, *Pac. Bell v. Pac. W. Telecomm. Inc.*, 325 F.3d 1114, 1123 (9th Cir. 2003); *United Mine Workers v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 966-67 (D.C. Cir. 1990) (remanding agency order without vacatur). This occurs when the Court finds the error is not serious and it is likely the agency can resolve the

issue on remand. *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (remanding without vacatur where agency mistake was not serious and there was a likelihood it could offer better reasoning on remand); *See Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013) (same). Here, both factors weigh in favor of remand without vacatur.

Turning first to the task of assessing the seriousness of NMFS's error, courts consider whether the agency could reach the same result on remand while curing its legal error. Vacatur of the ITR, BiOp, and EA would be inequitable here where the Court upheld significant parts of NMFS's analysis in those documents regarding the impacts of seismic surveys and other of Hilcorp's activities. *See, e.g.*, Order at 32-33; 47-51. Indeed, to the extent the Court found error in NMFS's analysis, it was limited to the narrow "determination that noise from tugs towing the drill rig would not cause" any non-lethal take by harassment of Cook Inlet beluga whales. Order at 52. Based on NMFS's analysis of this project to date, NMFS has authorized non-lethal take by acoustic harassment, and the Court's narrow ruling focuses on the same type of impact: noise from tugs towing drilling rigs. NMFS acknowledges that an underestimation of effects to Cook Inlet beluga whales could potentially be a concern, especially given their endangered status. Nevertheless, it is entirely reasonable—and indeed, possible—that NMFS could remedy its analysis under the MMPA, as well as its supporting analyses under the ESA and NEPA, with further evaluation and discussion of the potential impact of this discrete set of Hilcorp's activities—noise from tugboats towing drill rigs, as well as additional

mitigation measures for this activity. For example, the Court notes that the ITR offers conclusions about why tugboat noise is unlikely to lead to take under the MMPA but that it does so "without explaining how those conclusions were reached." Order at 22. NMFS should have the opportunity to provide that explanation for the Court, and to determine the appropriate administrative process to provide its evaluation on remand. These considerations counsel against wholesale vacatur of the ITR and supporting analyses.

Juxtaposed against the potential and undetermined extent of the agency's error are the disruptive consequences and other associated costs of vacatur. *Cal. Cmtys.*, 688 F.3d at 992. Here, the costs of vacating the matter are potentially serious as doing so would require the agency to undertake a notice-and-comment APA rulemaking to re-promulgate many provisions whose legality the Court has already upheld. Moreover, such a process would require the agency to expend limited resources for a rulemaking the agency has not yet decided is necessary or appropriate to undertake. *See Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1018 (E.D. Cal. 2013) (rejecting Plaintiffs' attempt to limit analysis of vacatur to potential environmental harm and finding "courts should consider economic and other practical concerns") (citation omitted); *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1106 (E.D. Cal. 2013) ("The Court agrees . . . that the determination of when to remand without vacatur should not be limited to situations where it is necessary to avoid environmental harm, but should instead be based on a broader examination of the equities.").

In *California Communities*, when the Ninth Circuit evaluated the disruptive consequences of vacating the challenged rule, it considered that vacatur "could well delay a much needed power plant," would be "economically disastrous," and would result in "needless and duplicative legislative effort[s]." 688 F.3d at 993-94. Similarly, in *Idaho Farm Bureau Federation*, the Ninth Circuit declined to vacate a regulation challenged under the ESA not just because vacatur could risk a species' safety but also because "the significant expenditure of public resources," including money spent on studies, "would be unnecessarily wasted." 58 F.3d at 1405–06; *see also Pac. Rivers Council*, 942 F. Supp. 2d at 1018, 1021, 1022 (refusing to vacate rule because of the "enormous disruptive consequences," including "logistical and financial disruptions," as well as environmental harm); *Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, No. 12-cv-9861-GW(SSx), 2016 WL 4445770 at *11 (C.D. Cal. Aug. 12, 2016) (remanding without vacatur because vacatur would "disrupt and delay the progress" of a project "created to meet a pressing public need," cause "serious economic problems," and result in "duplicative efforts," in addition to possible environmental harm). As these cases show, equity requires consideration of all disruptive effects and in this case weighs against vacatur.

Ultimately, the possibility that NMFS can supply the necessary supplemental analysis on remand without completely revisiting its actions counsels against vacatur. To require more would run contrary to the Supreme Court's guidance that equitable relief

must be narrowly tailored to the precise violation found. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

## III. NMFS should be free to exercise its discretion on remand.

The Court should decline to impose any court-ordered deadlines or dictate specific processes NMFS should follow on remand. Imposing such deadlines or dictating how an agency should proceed on remand is tantamount to an injunction. *Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 984 (9th Cir. 1994) (describing deadlines as injunctive relief). As the Supreme Court has ruled, injunctive relief constitutes an "extraordinary remedy, which should not be granted as a matter of course"—not even in an environmental case. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). And, as the Ninth Circuit has recognized, artificially setting timetables can constrain an agency's ability to conduct a proper, thorough analysis. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 606 (9th Cir. 2014); *see also Center for Biological Diversity v. EPA*, 861 F.3d 174, 189 n.12 (D.C. Cir. 2017) (declining to retain jurisdiction and oversee deadlines).

Moreover, when a court sets aside agency action under the APA, it is ordinarily the agency's prerogative to decide how best to provide relief. *See Vt. Yankee Nuclear Power Corp.*, 435 U.S. at 544 (holding that following remand "the agency should normally be allowed to 'exercise its administrative discretion in deciding how, in light of internal organization considerations, it may best proceed to develop the needed evidence

and how its prior decision should be modified in light of such evidence as develops.'"); *Asarco*, 616 F.2d at 1160 (holding that on remand the court should "not compensate for the agency's dereliction by undertaking its own inquiry into the merits.").

On remand in this case, NMFS will need sufficient time to properly exercise its discretion and complete its analysis on multiple fronts. Although it is improper to impose any set deadlines, NMFS recognizes the need to address the deficiencies identified by the Court in a timely manner. Once NMFS receives the additional information from Hilcorp needed to more fully support its assessment of the use of tugboats, the agency estimates that it will take "twelve months to reevaluate the ITR under section 101(a)(5)(A) of the MMPA, as well as to reevaluate the EA under NEPA and the BiOp under the ESA." *See* Exhibit A, Declaration of Jolie Harrison ("Harrison Decl.") ¶¶ 4-5. This amount of time will allow NMFS to responsibly address tugboat activity under the MMPA, ESA, and NEPA.

For instance, NMFS will need time to evaluate whether it needs to conduct a rulemaking to amend the ITR, and if so, how broad a rulemaking. If it determines a rulemaking is necessary, then NMFS will need to provide a minimum 30-day public comment period, draft a revised ITR and EA (if appropriate), and receive clearance for both the proposed and final rules from NOAA and the U.S. Department of Commerce. *Id.* ¶ 5. NMFS may also need to draft and obtain clearance for a revised biological opinion. *Id.* These efforts all require coordination between different offices within NMFS to harmonize the analyses conducted under each statute. NMFS's analysis, or method of

addressing the need for further analysis, under the ESA and NEPA is intrinsically tied to NMFS's decisions regarding the ITR. As such, the agency needs enough time to properly evaluate the facts, make informed decisions about the ITR, and "reconcile any potential revisions between the ITR, EA, and BiOp." *Id.* Preparing and completing this analysis is a considerable undertaking, and NMFS has based its time estimate on its direct experience. *Id.* ("This estimate is based on my past experience in similar situations and the time needed for clearance. . . ." *Id*. ¶ 7). It would be unreasonable not to allow NMFS adequate time to conduct its analysis as described in the Harrison Declaration. However, should the Court order vacatur of the ITR, BiOp, and EA, NMFS would need at least sixteen months, after receiving additional, required information from Hilcorp, to complete the necessary analyses. *Id*. ¶ 6. A wholesale revision of these documents would require all of the steps described above for a narrower amendment to the existing rule but would also involve the broader reconsideration of activities the Court has already upheld and the more extensive public comments that would be anticipated subject to public input by starting an entirely new rulemaking process. *Id*.

## CONCLUSION

For all of the foregoing reasons, Federal Defendants respectfully request that the Court remand the matter to NMFS for further consideration consistent with the Court's opinion, leaving the current ITR, BiOp, and EA in place pending completion of the remand.

Dated this 27th day of April, 2021.

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

EDWARD C. THOMAS
Trial Attorney, Natural Resources Section
United States Department of Justice
Post Office Box 7611
Washington, D.C. 20044-7611
Edward.C.Thomas@usdoj.gov
Tel: (202) 305-0239

*/s/ John H. Martin*
JOHN H. MARTIN (Colo. Bar 32667)
Wildlife & Marine Resources Section
999 18th St., South Terrace Suite 370
Denver, CO 80202
john.h.martin@usdoj.gov
Tel: (303) 844-1383
Fax: (303) 844-1350

*Of Counsel:*
JOHN FONSTAD
Assistant U.S. Attorney
United States Attorney's Office – District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: John.Fonstad@usdoj.gov

*Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that I have caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated: April 27, 2021                                           */s/ John H. Martin*