Kassia Siegel (AK Bar # 0106044)
Kristen Monsell (*Pro Hac Vice*)
Julie Teel Simmonds (*Pro Hac Vice*)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
T: (510) 844-7100
F: (510) 844-7150
E: ksiegel@biologicaldiversity.org
kmonsell@biologicaldiversity.org
jteelsimmonds@biologicaldiversity.org

*Attorneys for Plaintiffs Cook Inletkeeper and Center for Biological Diversity*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| COOK INLETKEEPER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> GINA RAIMONDO, Secretary of Commerce, et al., <br><br> *Defendants*, <br><br> and <br><br> HILCORP ALASKA, LLC, et al., <br><br> *Intervenor-Defendants*. | Civil Action No. 3:19-cv-00238-SLG |

**PLAINTIFFS' REPLY BRIEF ON REMEDY**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 1

   I. Vacatur Remains the Presumptive Remedy .................................................. 1

   II. The Court Should Vacate NMFS's Actions ................................................ 2

      A. Defendants Unsuccessfully Understate the Seriousness of NMFS's Violations ..... 2

      B. Defendants Cannot Avoid Vacatur with Allegations of Economic Harm and Inconvenience ........................................................................................ 7

CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Allied Signal Inc. v. U.S. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ................................................................................ 3

*Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*,
  No. CV 12-9861-GW(SSx), 2016 U.S. Dist. LEXIS 134134 (C.D. Cal. Aug. 12, 2016) ................................................................................................................... 9

*Cal. Cmtys. Against Toxics v. EPA*,
  688 F.3d 989 (9th Cir. 2012) ............................................................................. 3, 9

*Cal. Wilderness Coal. v. U.S. Dep't of Energy,*
  631 F.3d 1072 (9th Cir. 2011) ............................................................................ 3, 6

*Comcast Corp. v. FCC*,
  579 F.3d 1 (D.C. Cir. 2009) ................................................................................. 3

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
  No. C 03-2509 SI, 2006 U.S. Dist. LEXIS 73668 (N.D. Cal. Sep. 25, 2006) ..... 5, 6

*Humane Soc'y of the U.S. v. Locke*,
  626 F.3d 1040 (9th Cir. 2010) ............................................................................ 4, 5

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ................................................................................ 9

*Kokechik Fishermen's Ass'n v. Sec'y of Com.*,
  839 F.2d 795 (D.C. Cir. 1988) ............................................................................. 7

*League of Wilderness Defs. v. Peña*,
  No. 3:12-cv-02271-HZ, 2015 U.S. Dist. LEXIS 46279 (D. Or. Apr. 6, 2015) ........ 2

*League of Wilderness Defs. v. U.S. Forest Serv.*,
  No. 3:10-CV-01397-SI, 2012 U.S. Dist. LEXIS 190899 (D. Or. Dec. 10, 2012) . 11

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989) .............................................................................................. 7

*Pac. Rivers Council v. U.S. Forest Serv.*,
  942 F. Supp. 2d 1014 (E.D. Cal. 2013) ................................................................ 9

*Pollinator Stewardship Council v. EPA*,
    806 F.3d 520 (9th Cir. 2015) ............................................................................ 2, 4

*Se. Alaska Conservation Council v. U.S. Forest Serv.*,
    468 F. Supp. 3d 1148 (D. Alaska 2020) ................................................................ 7

*Sierra Forest Legacy v. Sherman*,
    951 F. Supp. 2d 1100 (E.D. Cal. 2013) ................................................................. 9

*Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978) .......................................................................................... 7, 8

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
    671 F.3d 1113 (9th Cir. 2012) ............................................................................ 10

**Statutes**

16 U.S.C. § 1361(1) .................................................................................................... 6

16 U.S.C. § 1361(6) .................................................................................................... 6

16 U.S.C. § 1362(8) .................................................................................................... 6

16 U.S.C. § 1371(a) .................................................................................................... 6

16 U.S.C. § 1371(a)(5)(B) .......................................................................................... 8

16 U.S.C. § 1371(a)(5)(D) .......................................................................................... 8

16 U.S.C. § 1536(a)(2) ............................................................................................... 7

43 U.S.C. § 1334(a)(1) ............................................................................................... 8

**Regulations**

30 C.F.R. § 250.172(d) ............................................................................................... 8

50 C.F.R. § 402.02 ...................................................................................................... 7

50 C.F.R. §§ 402.12–17 .............................................................................................. 7

# INTRODUCTION

Defendants have not met their burden to show this case presents the "rare" circumstances in which remand without vacatur is appropriate. The Court has already held the National Marine Fisheries Service (NMFS) failed to comply with the Marine Mammal Protection Act (MMPA), Endangered Species Act (ESA), and National Environmental Policy Act (NEPA) in issuing incidental take regulations (ITRs) allowing Hilcorp Alaska, LLC (Hilcorp) to harass critically endangered Cook Inlet beluga whales.

In arguing the Court should depart from the ordinary remedy of vacatur, Defendants aggressively downplay the gravity of NMFS's unlawful actions, disregard the precarious state of Cook Inlet belugas, posit the agency could reach the same outcome on remand, and identify inconvenient consequences of vacatur. Accepting Defendants' arguments as sufficient would set an unprecedently high bar for the presumptive remedy. Hilcorp's attempt to address NMFS's substantial errors through its self-serving post hoc analysis should similarly be rejected. Only through vacatur can the Court effectuate congressional intent while NMFS thoroughly addresses its errors on remand.

# ARGUMENT

## I.  Vacatur Remains the Presumptive Remedy

Defendants fail to demonstrate why this Court should depart from the normal remedy of vacatur. NMFS wrongly suggests the Court's power is limited to remand because vacatur would intrude on the agency's decisionmaking. *See, e.g.*, ECF No. 76 at 4. NMFS already unlawfully chose to issue the ITRs, Biological Opinion (BiOp), and

Environmental Assessment/Finding of No Significant Impact (EA/FONSI) without first considering the impacts of tugboat noise on Cook Inlet beluga whales. Contrary to NMFS's assertion, vacating and remanding the ITRs, BiOp, and EA/FONSI "does not dictate how the agency should comply with the law in the future." *League of Wilderness Defs. v. Peña*, No. 3:12-cv-02271-HZ, 2015 U.S. Dist. LEXIS 46279, at *13 (D. Or. Apr. 6, 2015). "Rather, it leaves to the agency the discretion of how to appropriately proceed after setting aside the arbitrary and capricious agency actions." *Id.*

Additionally, in pointing to examples where courts remanded agency actions without vacatur, Defendants ignore the Ninth Circuit's repeated instruction that such circumstances are "limited," and typically occur in environmental cases only where vacatur would result in considerable environmental harm. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). This is not one of those cases. NMFS's errors are serious and further threaten critically imperiled Cook Inlet belugas with noise pollution that NMFS may have prohibited or mitigated had it properly examined the full impacts of Hilcorp's activities. Supposition the agency will reach the same decision on remand and allegations of economic impacts and inconvenience cannot trump the presumption of vacatur.

## II. The Court Should Vacate NMFS's Actions

### A. <u>Defendants Unsuccessfully Understate the Seriousness of NMFS's Violations</u>

Defendants' arguments for why NMFS's violations do not warrant the ordinary remedy of vacatur are unpersuasive and unsupported by governing law. NMFS's errors

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG                                                           2

Case 3:19-cv-00238-SLG   Document 83   Filed 05/04/21   Page 6 of 17

mean the agency disregarded what it has elsewhere identified as one of the most significant threats to the continued existence of Cook Inlet belugas.

First, the Court should reject NMFS's contention that its errors are not serious because it is "possible" NMFS could reach the same result on remand after gathering more information from Hilcorp. ECF No. 76 at 8, 11. If vacatur could be avoided wherever there is *some* possibility of reaching the same result, it would virtually never be imposed. Rather, as the Ninth Circuit clarified in *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, "the [agency] could, in the exercise of its sound discretion, come to the same or similar conclusions that it did in the initial study. Of course, it might reach very different conclusions. What is critical is that it follow the statute's mandate." 631 F.3d 1072, 1096 (9th Cir. 2011); *see also Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009) (courts "have not hesitated to vacate a rule when the agency has not responded to empirical data or to an argument inconsistent with its conclusion.").

The vacatur test established by the D.C. Circuit and adopted by the Ninth does not establish a framework under which vacatur can be avoided wherever there is a chance an agency might sustain its original decision. *See Allied Signal Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012). Accepting Defendants' position would turn environmental statutes on their head, invite agencies to skirt vacatur by contending they would have reached the same conclusion had they complied with the law, and upend the Administrative Procedure Act's (APA) presumptive remedy of vacatur.

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG 3

NMFS misguidedly cites to *Pollinator Stewardship Council* for the proposition that the Court should consider whether "by complying with procedural rules, [the agency] could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." ECF No. 76 at 6 (citing 806 F.3d at 532). In *Pollinator*, the Ninth Circuit erred on the side of protecting bees (given the "precariousness" of their populations) by vacating EPA's registration of an insecticide pending remand. 806 F.3d at 532. Like in *Pollinator*, this Court should err on the side of protecting highly endangered Cook Inlet belugas from activities that have not undergone adequate agency review and decisionmaking and vacate those decisions pending remand. That is particularly true here as NMFS's errors are not limited to violations of procedural rules but include substantive violations of the MMPA.

Hilcorp also cites cases for general statements that ultimately cut against its desire for remand without vacatur. For example, it invokes *Humane Soc'y of the U.S. v. Locke* to argue remand without vacatur is appropriate "'[w]hen an agency may be able readily to cure a defect in its explanation of a decision.'" ECF No. 78 at 17 (quoting 626 F.3d 1040, 1053 (9th Cir. 2010) (citation omitted)). Yet the Ninth Circuit in *Locke* directed the district court to both remand *and vacate* NMFS's decision "to afford the agency the opportunity either to articulate a reasoned explanation for its action or to adopt a different action with a reasoned explanation that supports it." *Locke*, 626 F.3d at 1053.

In so doing, the Court concluded NMFS "ha[d] not adequately explained its finding" and "Defendants' post hoc explanations serve only to underscore the absence of

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG    4

Case 3:19-cv-00238-SLG   Document 83   Filed 05/04/21   Page 8 of 17

an adequate explanation in the administrative record itself." *Id.* at 1049. As in *Locke*, NMFS's errors are not rendered insignificant by the post hoc analysis offered by Hilcorp's multiple declarants in an inappropriate attempt to "fix" those errors and sidestep vacatur. *See, e.g.*, ECF No. 78 at 7, 22–23. After-the-fact analysis offered by an intervenor-defendant cannot supplant the legally adequate analyses and decisionmaking NMFS must conduct under the MMPA, ESA, and NEPA. This Court should reject Hilcorp's attempts to provide analyses and explanations that the agency did not.

Second, NMFS's position that vacating the ITRs, BiOp, and EA/FONSI would be inequitable because "the Court upheld significant parts of NMFS's analysis in those documents," ECF No. 76 at 7, is unsupportable. Nowhere does the APA or vacatur caselaw dictate the entirety of an agency's analysis be declared unlawful for the presumptive remedy to apply. Cases routinely conclude with parties prevailing on some, but not all, of their claims, and yet the remedy remains vacatur. *Locke* is just one of many such examples. *See* 626 F.3d at 1059 (accepting plaintiffs' MMPA arguments yet rejecting their NEPA claims).

In *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, the court rejected a similar agency request for remand without vacatur where the agency claimed "portions of the[e] documents [were] unaffected by deficiencies identified by the [c]ourt" and thus "the agencies could decide to supplement the documents rather [than] fully re-create the documents." No. 03-2509SI, 2006 U.S. Dist. LEXIS 73668, at *3 (N.D. Cal. Sept. 25, 2006). The court concluded that while "not unsympathetic to the issues raised by

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG          5

Case 3:19-cv-00238-SLG   Document 83   Filed 05/04/21   Page 9 of 17

defendants," "vacatur … is necessary to allow the agencies to fully and meaningfully address the substantive and procedural flaws detailed in the [c]ourt's summary judgment order." *Id.* at *5. This Court should do the same.

Defendants' attempts to cast this Court's decision as a "narrow" determination that tugs would not take belugas do nothing to change the significance of NMFS's legal violations. ECF Nos. 76 at 7; 77 at 11; 78 at 17. As Plaintiffs discussed, this so-called "narrow" error embodies one of the most significant threats to one of the world's most endangered marine mammals. ECF No. 79 at 7–14. And these errors permeated the agency's determinations under three of our nation's bedrock environmental laws, whose substantive and procedural mandates NMFS does not have the choice to disregard. *Id.* To describe NMFS's errors as "narrow" does not render them minor. *See, e.g.*, *Cal. Wilderness Coal.*, 631 F.3d at 1095 ("where a regulation is promulgated in violation of the APA and the violation is not harmless, the remedy is to invalidate the regulation.").

NMFS's errors include disregarding the MMPA's substantive "small numbers," "negligible impact," and "least practicable adverse impact" requirements, which are critical to achieving the MMPA's primary purposes. 16 U.S.C. §§ 1361(1), (6), 1371(a), 1362(8). The relevant congressional mandates also include the ESA's consultation requirement that culminates in "jeopardy" and "adverse modification" of critical habitat determinations upon evaluating the aggregate effects of the action in light of the status of the species and past, ongoing, and future activities. 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.02, 402.12–17. NMFS's errors also undermine congressional intent that it "afford

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG                                                                                       6

Case 3:19-cv-00238-SLG   Document 83   Filed 05/04/21   Page 10 of 17

first priority to the declared national policy of saving endangered species," *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 185 (1978), and prioritize "maintaining healthy populations of marine mammals." *Kokechik Fishermen's Ass'n v. Sec'y of Com.*, 839 F.2d 795, 800, 802 (D.C. Cir. 1988).

Omitting consideration of one of the most serious threats to belugas also thwarted NEPA's objectives by precluding NMFS "from taking the requisite hard look" and "depriv[ing] the public of the opportunity to comment on those impacts." *Se. Alaska Conservation Council v. U.S. Forest Serv.*, 468 F. Supp. 3d 1148, 1152 (D. Alaska 2020). Indeed, even if this Court had found only NEPA violations, which is not the case, it should not allow the unlawful action to remain in place until there is a "NEPA-compliant analysis." *Id.* at 1156. To achieve NEPA's goals, NMFS must fully consider and disclose the environmental consequences of its actions so NMFS "will not act on incomplete information, only to regret its decision after it is too late to correct." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989).[1]

B. <u>Defendants Cannot Avoid Vacatur With Allegations of Economic Harm and Inconvenience</u>

The seriousness of NMFS's errors should end the Court's inquiry as the errors make remand without vacatur inappropriate. *See* ECF No. 79 at 20–21. To the extent the Court considers Defendants' claims of economic harm and inconvenience, they cannot

---

[1] Hilcorp irrelevantly suggests it could have applied for a series of incidental harassment authorizations (IHAs) rather than ITRs. ECF No. 78 at 5. NMFS needs to conduct a comprehensive analysis regardless of the form of authorization.

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG                                                                                      7

outweigh the seriousness of NMFS's errors or otherwise satisfy Defendants' burden to demonstrate this is one of the "rare" cases in which remand without vacatur is appropriate.

As an initial matter, economic harms are not the kind of impacts that carry significant weight in MMPA, ESA, or NEPA cases, especially considering the underlying purposes of the ESA "to halt and reverse the trend toward species extinction, whatever the cost." *Tenn. Valley Auth.*, 437 U.S. at 184; *see also* ECF No. 79 at 21–22. That is doubly true here, because Defendants' alleged economic injuries from vacatur (many of which are unsubstantiated or exaggerated) are cabined by NMFS's stated intent to act on vacatur within 16 months, and Hilcorp's ability to get an IHA for any routine pipeline or platform maintenance activities that have the potential to harass marine mammals. *See* 16 U.S.C. § 1371(a)(5)(D).[2]

None of the cases on which Defendants rely dictate otherwise. *See* ECF Nos. 76 at 6; 77 at 17; 78 at 16. Indeed, Defendants' reliance on the Ninth Circuit's decisions in *Cal.*

---

[2] Hilcorp's allegations of disruption to its activities from vacatur are also insufficient to meet its burden because the MMPA always allows NMFS to withdraw or suspend the ITRs in certain circumstances. *See* 16 U.S.C. § 1371(a)(5)(B). Additionally, Hilcorp acquired federal leases knowing activities under those leases could be curtailed. For example, the Outer Continental Shelf Lands Act (OCSLA) provides "for the suspension or temporary prohibition of any operation or activity, including production, pursuant to any lease or permit" when there is "a threat of serious, irreparable, or immediate harm or damage . . . to the marine, coastal, or human environment." 43 U.S.C. § 1334(a)(1). OCSLA's implementing regulations provide for the suspension of activities under other circumstances, including "[w]hen necessary to carry out the requirements of NEPA or to conduct an environmental analysis." 30 C.F.R. § 250.172(d).

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG                                              8

Case 3:19-cv-00238-SLG   Document 83   Filed 05/04/21   Page 12 of 17

*Cmtys. Against Toxics* and *Idaho Farm Bureau Fed'n v. Babbitt* only underscores why Defendants have not met their burden here. In those cases, the court only remanded without vacatur after determining significant environmental harm would result from vacatur (among other substantial harms to the public interest). *Cal. Cmtys.*, 688 F.3d at 994; *Idaho Farm*, 58 F.3d 1392, 1405–06 (9th Cir. 1995). That is not the case here.

Similarly, the district court cases on which Defendants rely, ECF Nos. 76 at 8; 78 at 16, held equity demanded departing from the presumptive remedy of vacatur because vacatur would cause environmental harm. In *Pac. Rivers Council v. U.S. Forest Serv.*, the court found "harmful environmental consequences" would occur if it vacated the "environmentally superior" forest plan amendments and put the old plans back in place during remand. 942 F. Supp. 2d 1014, 1022 (E.D. Cal. 2013). Likewise, in *Sierra Forest Legacy v. Sherman*, the court determined the unlawfully adopted forest plan amendment was "environmentally preferable" to returning to the older plan. 951 F. Supp. 2d 1100, 1107 (E.D. Cal. 2013); *see also Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, No. 12-9861-GW(SSx), 2016 U.S. Dist. LEXIS 134134, at *21–23, 34–35 (C.D. Cal. Aug. 12, 2016) (declining to vacate the approval of mass public transportation project that would reduce traffic and air pollution where agency's errors were minor). Here, in contrast, vacatur will protect belugas while NMFS conducts the required analysis on remand.

Hilcorp submits extra-record declarations in a misguided attempt to rewrite the vacatur standard to one of environmental neutrality and claim that its activities—

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG 9

including ice-breaking tugs and tugs towing rigs—satisfy this standard because they will not harm or otherwise result in any take of belugas. ECF Nos. 78-1 at ¶¶ 38–43; 78-10; 78-13. But the Court cannot consider these declarations for these purposes. First, environmental neutrality is not the standard. Second, "post-decision information may not be advanced as a new rationalization either for sustaining or attacking an agency's decision because it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130–31 (9th Cir. 2012). Hilcorp's attempt to conduct this analysis post hoc only underscores NMFS's failure to do so in the first instance. Moreover, the MMPA, ESA, and NEPA charge *NMFS* with implementing the statutes and conducting relevant analyses, not the companies NMFS's regulations will affect.

Hilcorp also claims vacatur would disrupt its plans to decommission a well by September 1, 2021, as required by the Alaska Oil and Gas Conservation Commission. ECF No. 78 at 6. But, as one of Hilcorp's declarations acknowledges, it has already received several extensions from the Commission for completing this work. *See* ECF No. 78-1 at ¶ 30. Neither Hilcorp nor the State provides any reason why Hilcorp could not obtain another limited extension.

Additionally, NMFS makes the specious claim the Court should not vacate the ITRs because the agency would then have to spend resources developing new regulations. If such allegations were sufficient to satisfy the disruptive consequences prong, courts would never vacate unlawful regulations. Reevaluating and reissuing

*Cook Inletkeeper v. Ross*, Case No. 3:19-cv-00238-SLG    10

Case 3:19-cv-00238-SLG   Document 83   Filed 05/04/21   Page 14 of 17

regulations always requires expending agency resources. Such a rule would eviscerate the default remedy that courts vacate arbitrary and capricious agency actions. *See League of Wilderness Defs. v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2012 U.S. Dist. LEXIS 190899, at *10–11 (D. Or. Dec. 10, 2012) (rejecting similar arguments).

## CONCLUSION

The Court should vacate the ITRs, BiOp, and EA/FONSI.

Respectfully submitted this 4th day of May 2021.

/s/ Kristen Monsell
Kristen Monsell
(CA Bar #304793; *Pro Hac Vice*)

/s/ Julie Teel Simmonds
Julie Teel Simmonds
(CO Bar # 32822; *Pro Hac Vice*)

/s/ Kassia Siegel
Kassia Siegel (AK Bar # 0106044)
CENTER FOR BIOLOGICAL DIVERSITY

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

I certify that this document contains 2,747 words, excluding items exempted by Local Civil Rule 7.4(a)(4), and complies with the 2,750-word limit of Local Rule 7.4(a)(2).

/s/ *Kristen Monsell*
Kristen Monsell

# CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2021, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Kristen Monsell*
Kristen Monsell